UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                         CASE No. 8:07-CR-144-T-17TGW

ERIC SCOTT

_____

## REPORT AND RECOMMENDATION

This cause came on to be heard upon the Defendant's Motion to Withdraw Plea (Doc. 47). The defendant seeks to withdraw his guilty plea in order to obtain the right to appeal the denial of his motion to suppress. Following an evidentiary hearing, I find that, by the time of the defendant's guilty plea, the defendant had been informed by his lawyer, and fully understood, that his guilty plea precluded an appeal of the denial of his motion to suppress. Consequently, the defendant cannot demonstrate a fair and just reason for the withdrawal of his guilty plea. Therefore, I recommend that the motion be denied.

I.

On April 26, 2007, the defendant was charged in an indictment with being a felon in the possession of firearms and ammunition, in violation of 18 U.S.C. 922(g)(1), 924(e) (Doc. 1). The Federal Public Defender was appointed as the defendant's attorney (Docs. 11, 14). Due to a conflict, attorney Edward Panzica was substituted as his counsel (Docs. 21, 26, 27, 28).

Panzica subsequently filed on the defendant's behalf a Motion to Suppress Physical Evidence and Statements (Doc. 29) made during a search of the defendant's home on January 19, 2007. Following an evidentiary hearing, the motion to suppress was denied (Docs. 34, 35).

A jury trial was subsequently scheduled for August 4, 2008 (Doc. 37). The Government offered the defendant a plea agreement, which he rejected. However, a few weeks prior to the scheduled trial date, the defendant decided to plead guilty without a plea agreement. On July 25, 2008, after a full plea colloquy, the plaintiff pleaded guilty to the charge in the indictment (see Doc. 43).

During the plea colloquy, the defendant testified that he was a college graduate who reads, writes and speaks the English language (Doc. 51, pp. 9, 10). The factual basis for the charge was discussed, and the rights the defendant was giving up by entering a guilty plea were fully explained to him (id., pp. 4-8,13-14, 16). In particular, the defendant was advised that "any defense that [he had] is lost by a plea of guilty" (id., p. 14).

During the plea colloquy, the defendant was regularly asked if he had any questions concerning a topic that had just been explained (id., pp. 6, 16, 19, 27, 32). At one point, the defendant asked for clarification concerning the potential sentence (id., pp. 17-18). Near the end of the plea colloquy, I inquired whether the defendant had any questions concerning any of the matters that had been discussed, and the defendant asked whether the government would punish defendants for not accepting a plea agreement (id., pp. 27-28). After that matter was addressed, the defendant was then asked whether he had any questions relating to the case about anything that had not been discussed, and the defendant said he did not (id., p. 32).

At the conclusion of the guilty plea hearing, I found the defendant to be alert, articulate and intelligent. This statement is significant

because, as explained on the record, I typically only say at that point that a defendant is alert and understanding (id., p. 33). Consequently, my comment that the defendant was intelligent has special meaning. I also found that the defendant understood the nature of the charge, the possible penalties and the consequences of pleading guilty (id.). Accordingly, I recommended on July 25, 2008, that the defendant's plea of guilty be accepted (id.; Doc. 44). The defendant did not assert an objection to the recommendation regarding the guilty plea. On September 16, 2008, District Judge Elizabeth A. Kovachevich accepted the defendant's plea of guilty to the charge in the indictment and adjudicated him guilty of the offense (Doc. 46).

About one hour after Judge Kovachevich accepted the defendant's plea of guilty, the defendant, through his attorney, filed the Defendant's Motion to Withdraw Plea (Doc. 47).[1] The motion states that it is "[t]he defendant's position...that he mistakenly believed that his guilty plea still allowed him to preserve his right to appeal a Motion to Suppress, which was heard by this court on April 14, 2008, and denied by order on April 15,

---

[1]The acceptance of the guilty plea was electronically filed at 12:18 P.M. on September 16, and the motion to withdraw was electronically filed at 1:15 P.M. on September 16.

2008. The defendant would like to preserve his right to appeal the above motion" (id., ¶¶ 2, 3).

The motion to withdraw the guilty plea was referred to me for a report and recommendation (Doc. 48). The Government filed a memorandum in opposition to the motion (Docs. 49-50). Because it appeared that Panzica would be required to testify, new counsel, Stephen Leal, was appointed for the defendant (Doc. 56). After a failed attempt by the parties to resolve the matter without judicial intervention (see Docs. 57, 58, 59), an evidentiary hearing was scheduled for March 4, 2009 (Doc. 62).

At the evidentiary hearing, the defendant and Panzica testified. The defendant stated that, although he pleaded guilty, it has always been his position that he wanted to maintain his right to appeal the denial of his motion to suppress. In this regard, the defendant stated that Panzica "never really told" him that, by pleading guilty without a plea agreement, he would lose the right to appeal the suppression issue.[2]

_____

[2]Quotations of the witnesses' testimony are obtained from a review of an audiotape of the hearing of the Motion to Withdraw Plea.

The defendant stated that, after the motion to suppress was denied, Panzica discussed with him a trial and signing a plea agreement. The defendant testified that he told Panzica he could not sign a plea agreement because he wanted to preserve his right to appeal the denial of his motion to suppress. However, the defendant stated that, after he "read [about] the open plea," he told Panzica that he wanted to do an open plea because he thought that would preserve his right to appeal the suppression issue.[3]

The defendant acknowledged that no one told him during the plea colloquy that he could plead guilty and preserve his right to appeal the suppression issue. However, the defendant testified that, during the plea colloquy, it was stated that he could "appeal," and he thought that meant he could appeal the denial of the motion to suppress.

The defendant stated that, sometime after the plea hearing, he learned that this impression was mistaken. Thus, the defendant testified that, while reviewing the different types of pleas in a criminal procedure book, he realized that an open plea only permits the appeal of his sentence. After

---

[3]The defendant uses the term "open plea" to describe the entry of a guilty plea without a plea agreement.

confirming with Panzica that he could not appeal the denial of his motion to suppress, he told Panzica that he needed to withdraw his guilty plea.

The defendant averred that he "absolutely [would] not" have pleaded guilty if Panzica had explained to him that he would lose his right to appeal the suppression issue. Thus, the defendant testified that his "whole thing has always been I want my right to appeal that motion." The defendant added that he "wasn't really worried about" the sentencing because he believed that appealing the motion to suppress would ultimately bring him freedom.

Panzica testified next. He was the defendant's attorney from February to October 2008. During his representation, Panzica and the defendant met in person on several occasions and regularly spoke on the telephone.

Panzica stated that, after the defendant's motion to suppress was denied, he met with the defendant and informed him that, although an appeal is normally a "slender reed" to rely upon, the motion to suppress presented a good appellate issue. Panzica also testified he told the defendant that, in

order to preserve the suppression issue for an appeal, they would have to proceed to trial without a defense.[4]

When Panzica was asked whether the defendant could have been confused about his appellate options if he pleaded guilty, Panzica responded that it is "hard for me to imagine [that the defendant] would be confused" because "the only problem with a plea in this case was that we were going to lose our right to appeal the motion to suppress." In this regard, Panzica testified that a conditional plea, which would allow the defendant to plead guilty and preserve his right to appeal the motion to suppress, was not available because he was informed by the prosecution that conditional pleas were not done in the Middle District of Florida as a matter of practice. Panzica testified further that he and the defendant had "several specific discussions that entering the open plea would still allow us to preserve our right to appeal a sentencing issue but not the motion to suppress."

---

[4]Panzica testified that he also discussed with the defendant the Government's position that his sentence was subject to enhancement as a career offender. Thus, Panzica told the defendant that, instead of the statutory maximum of ten years, with an enhancement he would face a sentencing range of fifteen years to life.

Panzica stated that, on September 12, 2008, the defendant telephoned him about withdrawing his guilty plea. Panzica, who was in the midst of a custody hearing, asked the defendant to call him the following week because he wanted to discuss with him the rules regarding the withdrawal of a guilty plea. Additionally, Panzica was concerned that withdrawing the plea would affect the possibility of a sentence reduction for cooperation.

The defendant telephoned Panzica again on September 16, 2008, and iterated his desire to withdraw his guilty plea so that he could appeal the district court's denial of his motion to suppress. Panzica, who at that time believed District Judge Kovachevich had already accepted the guilty plea, explained to the defendant that, in order to pursue a motion to withdraw his guilty plea, the defendant would have to say "that I didn't tell you the things I told you."

When Panzica began drafting the motion to withdraw, he discovered that Judge Kovachevich had not yet accepted the defendant's guilty plea. However, before he finished drafting the motion, he received electronic notification that the guilty plea had been accepted.

II.

Rule 11(d), F.R.Crim.P., sets forth the circumstances under which a defendant may withdraw a plea of guilty. It provides:

> A defendant may withdraw a plea of guilty or nolo contendere:
> (1) before the court accepts the plea, for any reason or no reason; or
> (2) after the court accepts the plea, but before it imposes sentence if:
> (A) the court rejects a plea agreement under Rule 11(c)(5); or
> (B) the defendant can show a fair and just reason for requesting the withdrawal.

The defendant argues that the court should consider an automatic withdrawal of his guilty plea under Rule 11(d)(1), F.R.Crim.P., because the defendant's "request [to withdraw his guilty plea] was clearly made...to his prior counsel before the District Court entered the order accepting his guilty plea" (Doc. 65, p. 4). The defendant further notes the close timing between the acceptance of the guilty plea and the filing of the motion to withdraw—fifty-seven minutes—as an additional circumstance in support of this contention (see Doc. 47; Doc. 65, ¶¶ 9, 10).

This argument is unpersuasive. In the first place, Rule 11(d)(1), F.R.Crim.P., sets forth a bright-line standard that a defendant may withdraw his plea of guilty for any reason before the court accepts the plea. In other words, the request to withdraw must precede the acceptance of the plea. That did not occur here. The defendant does not cite any legal authority that this automatic withdrawal provision applies to conduct that falls short of filing a motion to withdraw.

Furthermore, the fact that the defendant missed the Rule 11(d)(1) sequential requirement by fifty-seven minutes does not authorize ignoring the plain terms of that rule and creating some form of equitable remedy, particularly under the circumstances of this case. Thus, the defendant had more than seven weeks to withdraw his guilty plea for any reason, which is far more than the ten days afforded by the report and recommendation regarding the guilty plea (Doc. 44).

The defendant alternatively argues that he has set forth a fair and just reason for allowing him to withdraw his guilty plea pursuant to Rule 11(d)(2)(B) (Doc. 65, p. 4). Where, as here, the court accepted the defendant's guilty plea before the defendant filed his motion to withdraw, the

defendant has the burden of showing "a fair and just reason for requesting the withdrawal." Rule 11(d)(2)(B), F.R.Crim.P. The defendant argues that "contemplat[ing] his decision to withdraw his plea before the court accepted the plea, along with his desire to preserve his right to appeal the Motion to Suppress...[are] fair and just reasons" for withdrawing his guilty plea (Doc. 47, p. 2; see also Doc. 65). Specifically, the defendant testified that he should be permitted to withdraw his guilty plea because he agreed to plead guilty under the mistaken impression that he would be able to appeal the denial of his motion to suppress. However, Panzica testified that the defendant had no such mistaken impression, and I accept Panzica's testimony as credible and accurate.

In determining whether a defendant has shown a "fair and just reason" for withdrawing a guilty plea a district court may consider the totality of circumstances surrounding the plea, including the following factors: "(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." U.S. v. Oliver, 2008 WL 4787145 at *2 (11th

Cir. 2008)(unpub. dec.)(quoting United States v. Buckles, 843 F.2d 469, 472 (11th Cir. 1988), cert. denied, 490 U.S. 1099 (citations omitted)).[5]

### 1. Whether close assistance of counsel was available.

The defendant in this case clearly had the close assistance of counsel. Panzica is a competent attorney who represented the defendant on the charge from February to October 2008. Panzica met in person with the defendant several times and they regularly spoke on the telephone about the case. During the guilty plea hearing, the defendant averred that counsel had discussed with him the charge in the indictment and that he did not need anymore time to discuss the case with his counsel prior to pleading guilty (Doc. 51, p. 15). Further, the defendant testified that, " for the most part...[he was] satisfied" with Panzica's representation (id., p. 15). He added, "[w]hen we had our Motion to Suppress I felt that maybe he should have researched the case a little bit more, but then it turned out that he actually did the best he could, so there was nothing more that he could do" (id., p. 16). Therefore, the

---

[5]The defendant notes that the length of the delay between the defendant's plea of guilty and the motion to withdraw the plea may also be considered (see Doc. 65, pp. 4-5, 9, 12). The time lapse in this case of approximately seven weeks does not support this request, and, in fact, cuts against it.

defendant's testimony shows that, in general, he had the close assistance of counsel. See U.S. v. Oliver, supra, 2008 WL 4787145 at *2 (there is "a strong presumption of truth regarding statements made by a defendant during the plea colloquy").

Moreover, Panzica's testimony establishes that the defendant had the close assistance of counsel in connection with the issue of whether the defendant could plea guilty and preserve his right to appeal the denial of the motion to suppress. Panzica explained that that specific issue was discussed with the defendant on several occasions. Further, Panzica stated he explored the possibility of a conditional plea that preserved the right to appeal the denial of the motion, but was informed that, as a matter of practice, the United States Attorney's Office does not provide the consent necessary under Rule 11(a)(2), F.R.Crim.P., for such a plea.

In sum, the defendant had the close assistance of counsel both in this case in general and on the specific matter that is at issue.

2. Whether the plea was knowing and voluntary.

Based on the thorough colloquy, I found that the defendant, who is articulate and intelligent, was pleading guilty freely and voluntarily, and

with an understanding of the consequences of pleading guilty. Indeed, the defendant stated, under oath, during the plea colloquy that he was pleading guilty freely and voluntarily, and that he understood the charge and the rights he was giving up by pleading guilty (Doc. 51, pp. 13-16, 23-24). See U.S. v. Oliver, supra, 2008 WL 4787145.

Nonetheless, the defendant contends that his plea of guilty was not voluntarily and understandingly made because he was under the mistaken impression that pleading guilty did not extinguish his right to appeal the adverse ruling on the motion to suppress (Doc. 65, pp. 7-8). Specifically, the defendant testified that, when his attorney and the court stated that he could "appeal," he assumed that meant he could appeal the motion to suppress.

The matter of appeal was brought up during the plea colloquy in connection with a plea agreement.[6] Panzica stated that the defendant decided not to accept a plea agreement to a large extent because such an agreement would contain the United States Attorney's Office's standard limitation on the right to appeal a sentence (Doc. 51, p. 22). In other words, when appeal was

---

[6]I generally raise this issue if there is no plea agreement in an effort to head off claims that a defense attorney was ineffective for failing to pursue a plea agreement.

first discussed, it was in the context of retaining "the ability to appeal a possible sentence" (id.). There was never a point at which a possible appeal referred to anything else.

In all events, Panzica clearly and unequivocally testified that he told the defendant, repeatedly, that pleading guilty without a plea agreement would not preserve his right to appeal the motion to suppress. Thus, Panzica averred that he and the defendant had "several specific discussions that entering the open plea would...allow us to preserve our right to appeal a sentencing issue but not the motion to suppress."

I find Panzica's testimony credible, and therefore reject the defendant's testimony that he was unaware that pleading guilty would extinguish his right to appeal the suppression issue. Although, as explained below, this credibility finding is supported by a number of circumstances, the primary basis for the finding is Panzica's demeanor during his testimony. That includes not only his appearance, but what he said and how he said it. Panzica impressed me strongly as someone who was telling the truth and telling it accurately.

In addition, the defendant's credibility is subject to question because he is a convicted felon and has an interest in the outcome of this matter.[7] In contrast, Panzica has no interest in the outcome and no apparent reason to prevaricate.

Furthermore, the circumstances surrounding this case make implausible the defendant's testimony that he was unaware that, by pleading guilty, he would lose his right to appeal the denial of the motion to suppress. The defendant demonstrated during the guilty plea colloquy and the hearing on the motion to withdraw that he is intelligent, educated and articulate. The defendant, who, with four previous convictions, was no stranger to the criminal justice system, testified that he had suggested to Panzica after doing his own research that he enter an open plea of guilty in this case. If the defendant did any meaningful research concerning the consequences of a guilty plea, it is hard to believe that he would not have discovered that, by pleading guilty, he would lose the right to appeal the denial of the motion to

---

[7]In fact, the defendant has already testified inconsistently in this case. Thus, he testified at the guilty plea hearing that he was a college graduate (Doc. 51, pp. 9-10). The defendant, at the hearing on the motion to withdraw, stated under oath that he had not graduated from college.

suppress. See United States v. Buckles, supra, 843 F.2d at 474 (considering that the defendant, who had pleaded guilty previously to a crime, was not unfamiliar with plea proceedings).

Furthermore, the defendant's testimony is inconsistent with his conduct at the guilty plea hearing. Thus, at the hearing on the motion to withdraw, the defendant testified that his focus has always been on his right to appeal the motion to suppress, and that he did not care about the length of his sentence because he believed he would ultimately prevail on the suppression issue on appeal.

However, at the guilty plea hearing, the defendant did not mention the suppression issue, even after I stated that "any defense to this charge...is lost by a plea of guilty," or after his counsel stated that the defendant rejected a plea agreement in order to preserve his "ability to appeal a possible sentence" (Doc. 51, pp. 14, 22). Furthermore, I concluded the plea colloquy by asking the defendant whether he had any questions about any matter that we had discussed and then by asking whether he had any questions about anything we had not discussed (id., pp. 27, 32). Despite the defendant's alleged focus on preserving his right to appeal the suppression

-18-

issue, the defendant asked no question concerning that matter. That demonstrates to me that he already knew the answer to that question because Panzica had given him the answer previously.

For these reasons, I reject the defendant's testimony that he was unaware prior to pleading guilty that his right to appeal the suppression issue was extinguished by his plea of guilty. Accordingly, I find, as I did at the guilty plea hearing, that the defendant's plea to this charge was knowing and voluntary.

3/4. <u>Whether judicial resources would be conserved/Whether the government would be prejudiced if the defendant were allowed to withdraw his plea.</u>

Where, as here, the defendant received close assistance of counsel and entered the plea knowingly and voluntarily, considerable weight does not need to be given to these remaining factors. <u>See</u> <u>United States</u> v. <u>Gonzalez-Mercado</u>, 808 F.2d 796, 801 (11th Cir. 1987). Nonetheless, it is noted that these factors also weigh against the defendant.

Allowing the defendant to withdraw his plea would not conserve resources of the court or parties because it would require a trial that would

otherwise be unnecessary. Further, the Government would be prejudiced by the withdrawal of the guilty plea because it would have to reassemble witnesses and evidence and prepare anew for a trial after a significant time lapse. See U.S. v. McCree, 225 Fed.Appx. 860, 865 (11th Cir. 2007)("a delay in any case degrades the quality of witness recollection and in that regard prejudices the presentation of the prosecution's case."). The defendant's argument that a trial by jury would be unnecessary if he is permitted to enter a conditional plea (Doc. 65, p. 8) is unpersuasive because this option has already been explored in this case, and rejected by the Government.

In addition, the suggestion that the defendant would file an ineffective assistance of counsel claim if his request to withdraw his guilty plea is rejected (id., pp. 8-9), and thereby increase the use of judicial and party resources, is also unpersuasive. In the first place, that suggestion does not change the lack of merit in the defendant's motion to withdraw his guilty plea. Moreover, even if such a claim were filed, it could seemingly be resolved without great time and effort based upon the evidence that was developed in connection with the motion to withdraw the guilty plea.

III.

For the foregoing reasons, the defendant has failed to provide a fair and just reason for withdrawing his guilty plea. Accordingly, since that is the proper standard, I recommend that the Defendant's Motion to Withdraw Plea (Doc. 47) be denied.

Respectfully submitted,

THOMAS G. WILSON
DATED: APRIL _8_, 2009     UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. 636(b)(1).